# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:25-cv-02025-ES-LDW

BARGO et al v. APPLE INC. et al
Assigned to: Judge Esther Salas
Referred to: Magistrate Judge Leda D. Wettre
Cause: 18:1961 Racketeering (RICO) Act

Date Filed: 03/21/2025
Jury Demand: Plaintiff
Nature of Suit: 470 Racketeer/Corrupt
Organization
Jurisdiction: Federal Question

**Plaintiff**

**JULIAN BARGO**                    represented by **GARY MARTIN MEYERS**
LAW OFFICES OF G. MARTIN MEYERS,
PC
35 WEST MAIN STREET
SUITE 106
DENVILLE, NJ 07834
(973) 625-0838
Email: gmm@gmeyerslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JUSTIN MEYERS**
LAW OFFICES OF G. MARTIN MEYERS,
PC
35 WEST MAIN STREET
SUITE 106
DENVILLE, NJ 07834
973-625-0838
Fax: 973-625-5350
Email: justin@gmeyerslaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LAMAR PRATER**                    represented by **GARY MARTIN MEYERS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JUSTIN MEYERS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**REBECCA PRATT**                    represented by **GARY MARTIN MEYERS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JUSTIN MEYERS**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **APPLE INC.** | represented by | **MARC AARON SILVERMAN**<br>DLA PIPER LLP (US)<br>51 JOHN F. KENNEDY PARKWAY, ST<br>120<br>SHORT HILLS, NJ 07078<br>212-335-4828<br>Email: marc.silverman@dlapiper.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **APPLE PAYMENTS INC.** | represented by | **MARC AARON SILVERMAN**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **GOOGLE LLC** | represented by | **CAROLINE PIGNATELLI**<br>COOLEY LLP<br>55 HUDSON YARDS<br>NEW YORK, NY 10001<br>212-479-6679<br>Fax: 212-479-6275<br>Email: cpignatelli@cooley.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **GOOGLE PAYMENT CORP.** | represented by | **CAROLINE PIGNATELLI**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 03/21/2025 | 1 | COMPLAINT against APPLE INC. ( Filing and Admin fee $ 405 receipt number ANJDC-16111273) with JURY DEMAND, filed by JULIAN BARGO.(MEYERS, JUSTIN) (Entered: 03/21/2025) |
| 03/23/2025 | | CLERK'S QUALITY CONTROL MESSAGE - The case you electronically filed did not include a Civil Cover Sheet (JS-44), which is required to be submitted along with the initial pleading, as indicated in the Attorney Case Opening Guide. Please complete and file a Civil Cover Sheet using the event Exhibit (to Document) found under Civil/Other Filings/Other Documents. Please refer to the Attorney Case Opening Guide for processing electronically filed cases. (jr) (Entered: 03/23/2025) |

| 03/24/2025 | 2 | Exhibit to 1 Complaint *Case Information Statement* by All Plaintiffs. (MEYERS, JUSTIN) (Main Document 2 replaced on 3/24/2025) (ld). (Entered: 03/24/2025) |
|---|---|---|
| 03/24/2025 | | Case assigned to Judge Michael E. Farbiarz and Magistrate Judge Leda D. Wettre. (jr) (Entered: 03/24/2025) |
| 03/24/2025 | 3 | SUMMONS ISSUED as to APPLE INC., APPLE PAYMENTS INC., GOOGLE LLC, GOOGLE PAYMENT CORP. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (ld) (Entered: 03/24/2025) |
| 03/24/2025 | | CLERK'S QUALITY CONTROL MESSAGE - The 2 Exhibit to 1 Complaint Case Information Statement filed by (JUSTIN MEYERS) on (3/24/2025) was uploaded prior to being flattened. Before uploading fillable forms to ECF you must flatten the file to prevent other users from manipulating or editing the information. The easiest way to flatten a PDF form is by selecting Print to PDF and saving the flattened form, other PDF software may differ. Please visit our website under Flattening PDF Forms for guidance. Your document has been corrected. This message is for informational purposes only. (ld) (Entered: 03/24/2025) |
| 04/07/2025 | 4 | NOTICE of Appearance by CAROLINE PIGNATELLI on behalf of GOOGLE LLC, GOOGLE PAYMENT CORP. (Attachments: # 1 Exhibit A - JPML Notice Filing) (PIGNATELLI, CAROLINE) (Entered: 04/07/2025) |
| 04/07/2025 | 5 | NOTICE of Appearance by MARC AARON SILVERMAN on behalf of APPLE INC., APPLE PAYMENTS INC. (Attachments: # 1 Exhibit Notice of Potential Tag A-Long Action)(SILVERMAN, MARC) (Entered: 04/07/2025) |
| 04/08/2025 | 6 | NOTICE by APPLE INC., APPLE PAYMENTS INC. *of Service of Errata* (Attachments: # 1 Exhibit MDL Notice of Errata)(SILVERMAN, MARC) (Entered: 04/08/2025) |
| 04/11/2025 | 7 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Claire C. Cecchi for all further proceedings. Judge Michael E. Farbiarz no longer assigned to case. So Ordered by Chief Judge Renee Marie Bumb on 4/11/25. (ak, ) (Entered: 04/11/2025) |
| 04/11/2025 | 8 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Esther Salas for all further proceedings. Judge Claire C. Cecchi previously reassigned in error and is no longer assigned to case. So Ordered by Chief Judge Renee Marie Bumb on 4/11/25. (ak, ) (Entered: 04/11/2025) |
| 04/14/2025 | | Remark: The Clerk of the Judicial Panel on Multidistrict Litigation has determined that this matter is not appropriate for inclusion in MDL 3001. Text order entered on 4/14/2025 in case number 5:21-md-3001 in the Northern District of California. This message is for information purposes only. (krg, ) (Entered: 04/14/2025) |
| 04/21/2025 | 9 | Request for Summons to be Issued by JULIAN BARGO, REBECCA PRATT, LAMAR PRATER as to APPLE INC., APPLE PAYMENTS INC.. (MEYERS, JUSTIN) (Entered: 04/21/2025) |
| 04/24/2025 | | CLERK'S QUALITY CONTROL MESSAGE - Regarding the 9 Request for Summons to Issued, please be advised summonses for all Defendants have been issued and can be found at docket entry 3 (mxw, ) (Entered: 04/24/2025) |
| 04/24/2025 | 10 | WAIVER OF SERVICE Returned Executed by JULIAN BARGO, REBECCA PRATT, LAMAR PRATER. GOOGLE LLC waiver sent on 4/3/2025, answer due 6/2/2025. (MEYERS, GARY) (Entered: 04/24/2025) |

| 04/24/2025 | 11 | WAIVER OF SERVICE Returned Executed by JULIAN BARGO, REBECCA PRATT, LAMAR PRATER. GOOGLE PAYMENT CORP. waiver sent on 4/3/2025, answer due 6/2/2025. (MEYERS, GARY) (Entered: 04/24/2025) |
| --- | --- | --- |
| 04/24/2025 | 12 | Waiver of Service Returned Unexecuted as to Apple Inc., filed by JULIAN BARGO, LAMAR PRATER, REBECCA PRATT. (MEYERS, GARY) (Entered: 04/24/2025) |
| 04/24/2025 | 13 | Waiver of Service Returned Unexecuted as to Apple Payments Inc., filed by JULIAN BARGO, LAMAR PRATER, REBECCA PRATT. (MEYERS, GARY) (Entered: 04/24/2025) |
| 04/29/2025 | 14 | SUMMONS Returned Executed by JULIAN BARGO, REBECCA PRATT, LAMAR PRATER. APPLE INC. served on 4/25/2025, answer due 5/16/2025. (MEYERS, JUSTIN) (Entered: 04/29/2025) |
| 04/29/2025 | 15 | SUMMONS Returned Executed by JULIAN BARGO, REBECCA PRATT, LAMAR PRATER. APPLE PAYMENTS INC. served on 4/25/2025, answer due 5/16/2025. (MEYERS, JUSTIN) (Entered: 04/29/2025) |

**PACER Service Center**

| **Transaction Receipt** | | | |
| --- | --- | --- | --- |
| 05/05/2025 18:07:18 | | | |
| **PACER Login:** | firmaccount | **Client Code:** | 000138.000007 |
| **Description:** | Docket Report | **Search Criteria:** | 2:25-cv-02025-ES-LDW Start date: 1/1/1980 End date: 5/5/2025 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JULIAN BARGO, LAMAR PRATER and REBECCA PRATT, on behalf of themselves and all others similarly situated, | No. |
| Plaintiffs, | *Civil Action* |
| v. | Hon. |
| APPLE INC., APPLE PAYMENTS INC., GOOGLE LLC, and GOOGLE PAYMENT CORP., | |
| Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs JULIAN BARGO, residing in Cliffside Park, New Jersey, LAMAR PRATER, residing in Schenectady, New York, and REBECCA PRATT, residing in Falconer, New York, on behalf of themselves and all others similarly situated, bring this action against Defendants APPLE INC., APPLE PAYMENTS INC., GOOGLE LLC, and GOOGLE PAYMENT CORP., to recover money lost to illegal gambling, for injunctive relief, and for other appropriate relief, from an illegal interstate gambling enterprise facilitated by the Defendants and in which they materially participate.

## INTRODUCTION

1.      This case is about patently illegal gambling software being distributed to the cell phones, desktop computers and other personal electronic devices of individuals throughout New Jersey, New York and beyond, by an unlawful enterprise that includes two of the most successful companies in the world.

2.      The Defendants promote, distribute, facilitate and materially participate in an interstate gambling enterprise using software developed by a dozen or so Sweepstakes Casinos.

The Sweepstakes Casinos are the developers and operators of websites and digital software applications ("apps") with fanciful names that evoke casino enterprises and offer games of chance that mirror the games typically found in traditional brick-and-mortar casinos, like slot machines, blackjack, poker, roulette and other forms of lottery wheel.

3.      These Sweepstakes Casinos misleadingly describe themselves as "social casinos" to promote the deception that their websites and apps are free to play purely for entertainment purposes only. In reality, Sweepstakes Casinos throw a wild card into the deck: They simultaneously promote sweepstakes awards that effectively transform their supposedly free "social casinos" into an unauthorized, and unlawful, interstate gambling enterprise, in all but name.

4.      Besides the websites operated by the Sweepstakes Casinos themselves, their games are available through apps that can be downloaded from the well-known software application platforms owned and operated by Defendants APPLE (the "App Store") and GOOGLE (the "Play Store") to any personal electronic device running on either company's respective operating system.

5.      The list of Sweepstakes Casinos proliferates by the day and includes, but is not limited to, "High 5 Casino", operating as a website (*available at* https://high5casino.com), app and YouTube channel, which websites and operations are unlawful under state and federal law; "Wow Vegas", operating as a website (*available at* https://www.wowvegas.com/) and app, which websites and operations are unlawful under state and federal law; "CrownCoins Casino", operating as a website (*available at* https://crowncoins.com), along with an app and YouTube channel, which websites and operations are unlawful under state and federal law; "McLuck", operating as a website (*available at* https://www.mcluck.com) and app, which websites and operations are unlawful under state and federal law; "Chumba Casino", operating as a website (*available at* https://www.chumbacasino.com), along with an app and YouTube channel, which websites and

operations are unlawful under state and federal law; "LuckyLand Slots", operating as a website (*available at* https://LuckyLandslots.com), along with an app and YouTube channel (@LuckyLand7395), which websites and operations are unlawful under state and federal law; "Global Poker", operating as a website (*available at* https://globalpoker.com), along with an app, which websites and apps are unlawful under state and federal law; *inter alios*, including Jackpota (*available at* https://www.jackpota.com/), Stake.us (*available at* https://stake.us/), "Scrooge Casino" (*available at* https://scrooge.casino/); and more, all of which are unlawful under state and federal law.

6. These Sweepstakes Casinos, along with others, engage in a substantially similar, if not identical, pattern of fraud and misconduct. They entice individuals, such as the Plaintiffs and other members of the proposed class, to their websites and apps by fraudulently representing that they provide free games of chance designed purely for fun and entertainment. *Plaintiffs have discovered—but only after each losing thousands of dollars—that the Sweepstakes Casinos are in fact real casinos, where real money can be wagered and lost in exchange for the chance to win an arbitrary financial reward.*

7. Users either sign up on the Sweepstakes Casino's website, or, more commonly, download the Casino's corresponding app from APPLE's App Store or GOOGLE's Play Store to a personal electronic device (*i.e.*, cell phone or tablet) powered by either of the Defendants' operating systems (*i.e.*, APPLE's iOS or GOOGLE's Android). Once a user creates an account with a Sweepstakes Casino, the Casino sells to the user, in exchange for real money, virtual utility tokens that can be used to wager on the digital games of chance described at ¶ 2, *supra*.

8. But the scheme does not end there. While the utility tokens sold by the Sweepstakes Casinos have no value outside the platform itself, and are primarily used only to play the Casino's

digital games of chance, *the Sweepstakes Casinos simultaneously throw in a second class of virtual tokens that qualifies the user for sweepstakes prizes. These coins are ultimately redeemable for real value, like cash, gift cards, cryptocurrency (including Bitcoin), etc.*

9.     In sum, the Sweepstakes Casinos allow users to purchase virtual coins, typically called "Game Coins", "Gold Coins" or the like, that can be used to play in their digital casinos; and in return for playing, they distribute a secondary class of virtual currency, typically called "Sweeps Coins", "Sweepstakes Coins" or the like, that offer users the prospect of an arbitrary financial windfall—*just like a traditional brick-and-mortar casino*.

10.     The Sweepstakes Casinos have succeeded in misleading regulators about the true nature of their operations for far too long. They are *not* licensed casinos. They are *not* regulated by any casino regulator as a traditional casino would be. No one is looking over anyone's shoulder to ensure that their digital dice aren't loaded. And the Sweepstakes Casinos have, thus far, managed to entirely insulate themselves from civil liability by hiding behind an iron curtain of bizarre arbitration agreements, many of which require arbitration in far flung locales like Malta, the Isle of Man, *etc.*

11.     Defendants APPLE INC., APPLE PAYMENTS INC., GOOGLE LLC, and GOOGLE PAYMENT CORP. (collectively, "the Defendants") willingly assist, promote and profit from this illegal scheme by, *inter alia*: (1) offering users access to the apps designed by the Sweepstakes Casinos through APPLE's App Store and GOOGLE's Play Store, thereby helping the Sweepstakes Casinos turn their customer's cell phones, iPads and tablets into illegal gambling devices and/or slot machines, as those terms are defined under state law; (2) taking a substantial percentage of consumer purchases of Game Coins, Sweeps Coins and other transactions within the apps distributed by the Sweepstakes Casinos through the App Store or Play Store, respectively;

(3) processing illicit transactions between consumers and the Sweepstakes Casinos using their proprietary payment systems, *viz.*, APPLE PAYMENTS' "Apple Pay" and GOOGLE PAYMENT's "Google Pay" (a/k/a "G-Pay"); and (4) by using targeted advertising that, *inter alia*, employs search algorithms within GOOGLE's Chrome browser and APPLE's Safari browser to shepherd the most vulnerable customers to the Sweepstakes Casinos' websites and apps, thereby facilitating this unlawful gambling enterprise.

## PARTIES

12.     Plaintiff JULIAN BARGO is an adult citizen of New Jersey, residing in Bergen County. Plaintiff has lost well over $1,000 to the illegal gambling enterprise in which Defendants have participated.

13.     Plaintiff LAMAR PRATER is an adult resident citizen of New York, residing in Schenectady County. Plaintiff LAMAR PRATER has lost well over $1,000 to the illegal gambling enterprise in which Defendants have participated.

14.     Plaintiff REBECCA PRATT is an adult resident citizen of New York, residing in Chautauqua County. Plaintiff REBECCA PRATT has lost well over $1,000 to the Defendants' illegal gambling enterprise in which Defendants have participated.

15.     Defendant APPLE INC. ("APPLE") is a corporation organized and existing under the laws of California, with its principal place of business in Cupertino, California. APPLE owns and operates the "App Store," a platform widely available to users of APPLE's iOS devices (*e.g.*, iPhones and iPads) and others, through which they can download and obtain access to the illegal casino websites owned and operated by the Sweepstakes Casinos, thereby turning their phones or other electronic devices into instruments used in the illegal gambling enterprise in which the Defendants have participated. APPLE does business by registered agent within the venue of this

District, and throughout New Jersey, New York and the United States generally.

16.     Defendant APPLE PAYMENTS INC. ("APPLE PAYMENTS") is a Delaware corporation and licensed money transmitter with its principal place of business in Austin, Texas. APPLE PAYMENTS is a wholly owned subsidiary of Defendant APPLE. APPLE PAYMENTS provides payment processing services to various websites and other digital businesses, primarily through their digital wallet known as the "Apple Wallet" using payment systems known as "Apple Pay" and "Apple Cash". APPLE PAYMENTS processes purchases made by customers who download the Sweepstakes Casinos' apps from APPLE's App Store as well as purchases made within the Sweepstakes Casinos' apps and websites ("in-app purchases"). Upon information and belief, APPLE PAYMENTS collects substantial commissions on purchases from the Sweepstakes Casinos using Apple Pay or Apple Cash. APPLE PAYMENTS does business by registered agent within the venue of this District, and throughout New Jersey, New York, and the United States, generally.

17.     Defendant GOOGLE LLC ("GOOGLE") is a corporation organized and existing under the laws of California, with its principal place of business in Mountain View, California. GOOGLE owns and operates the "Play Store", a platform widely available to users of GOOGLE's Android phones and others, through which they can download and obtain access to the illegal casino websites owned and operated by the Sweepstakes Casinos, thereby turning their phones or other electronic devices into instruments used in the illegal gambling enterprise in which the Defendants have participated. GOOGLE does business by registered agent within the venue of this District, and throughout New Jersey, New York, and the United States generally.

18.     Defendant GOOGLE PAYMENT CORP. ("GOOGLE PAYMENT") is a Delaware corporation and licensed money transmitter with its principal place of business in Mountain View,

California. GOOGLE PAYMENT is a subsidiary of Defendant GOOGLE and therefore owned by Alphabet, Inc. GOOGLE PAYMENT provides payment processing services to various websites and other digital businesses, primarily through a digital wallet and payment system known as "Google Pay" (a/k/a "GPay"). GOOGLE PAYMENT processes purchases made by customers who download the Sweepstakes Casinos' apps from GOOGLE's Play Store as well as in-app purchases made within the Sweepstakes Casinos' apps and websites. Upon information and belief, GOOGLE PAYMENT collects substantial commissions on purchases from the Sweepstakes Casinos using GPay. GOOGLE PAYMENT does business by registered agent within the venue of this District, and throughout New Jersey, New York, and the United States generally.

## JURISDICTION AND VENUE

19.    Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the class is a citizen of a state different from any of the Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

20.    This Court has personal jurisdiction over the Defendants because each of the Defendants conducts significant business in this federal district and throughout New Jersey, New York, and the United States generally, and because the wrongful conduct alleged by one or more of the Plaintiffs occurred here in this federal district.

21.    Venue is proper in this federal district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this federal district and because the Defendants committed the acts that are the basis for this lawsuit within this federal district.

## FACTUAL ALLEGATIONS

### I. The 'Sweepstakes Casino' Model

22.     The Sweepstakes Casinos actively promote and operate internet gambling websites and downloadable apps that target citizens of New Jersey, New York, and elsewhere, thereby conducting business within the venue of this District and throughout New Jersey, New York and the United States generally.

23.     The Sweepstakes Casinos entice individuals like the Plaintiff and proposed class members to play their websites and downloadable apps by issuing a bundle of virtual utility tokens, typically called "Game Coins", "Gold Coins" or the like, that can be used to play their digital games of chance ostensibly for fun and entertainment. After the customers inevitably lose their initial allotment of 'free' Game Coins, they are prompted to purchase more if they wish to continue playing the Defendants' games.

24.      As the user continues playing, the Sweepstakes Casinos also provide an allotment of *sweepstakes* tokens, typically called "Sweeps Coins", "Sweepstakes Coins" or similar.[1] *Players continue wagering on the Defendants' games of chance in the hopes of winning enough Sweeps Coins to redeem them for valuable prizes like cash, gift cards, or cryptocurrency (including Bitcoin),* inter alia*.*

25.     *In short, what begins as a straightforward "pay to play" social casino quickly morphs into an illicit gambling site, where users are paying real money to play games of chance in the hopes of winning an arbitrary financial windfall. The sale of Game Coins is simply a pretext*

---

[1] High 5 Casino refers to their utility tokens as *Game Coins* and their sweepstakes tokens as *Sweeps Coins*.  CrownCoins Casino the monikers *Crown Coins* and *Sweeps Coins*, respectively.  Wow Vegas uses *Wow Coins* and *Sweep Coins*, respectively.  McLuck refers to them as *Gold Coins* and *Sweepstakes Coins*, respectively.  Chumba Casino and Luckyland Slots use *Gold Coins* and *Sweeps Coins*, respectively. These are just a sample of the various denominations used by sweepstakes casino websites.

*to entice users to win Sweeps Coins, in what amounts to an unlawful, unauthorized casino—the exact type of illicit gambling operation prohibited by state and federal law.*

26.     By awarding sweepstakes tokens that have real value, the Sweepstakes Casinos' websites and apps—deceptively marketed to the public as harmless 'social' casinos—are, for all intents and purposes, unlawful Internet casinos operating throughout New Jersey, New York and across the country, without any authorization to do so. The difference between the casino websites owned and operated by Sweepstakes Casinos, and digital casinos owned and operated by traditional brick-and-mortar casinos, is that the latter are licensed businesses, heavily regulated to ensure that they pay when the player wins, and the house loses. The Sweepstakes Casinos are not licensed, not regulated, and as the Plaintiff and other class members have come to learn time and time again, Sweepstakes Casinos are playing with a loaded deck—*these unlicensed, unlawful Sweepstakes Casinos only pay as, when, and if they choose to do so.*

27.     Notably, while marketing themselves as 'social casinos' for fun and entertainment, the Sweepstakes Casinos go so far as to make empty claims about self-exclusion policies designed to protect against gambling addiction. But because these Sweepstakes Casinos are not licensed casinos, and are not beholden to any casino regulator, there is no way to ensure that they will honor any self-exclusion request from an addicted user, or otherwise enforce any of their purported 'self-exclusion' policies.

## II.  The Examples of High 5 Casino, Chumba Casino and Luckyland Slots

28.     High 5 Casino ("High 5") is a sweepstakes casino website with affiliated app available through both APPLE's App Store and GOOGLE's Play Store. High 5 Casino offers traditional games of chance like blackjack and roulette, along with a plethora of digital slot machines. The user interface on High 5 Casino is largely identical to the design and feel of games

that may be found in traditional brick-and-mortar casinos (*fig's* 1-2):



**fig. 1**



**fig. 2**

29. Just like in a real casino, the outcome of High 5's games of chance are purportedly determined at random. Once a user enters a wager on a particular game (*e.g.*, blackjack or slots),

the website or app being used displays a result determined by High 5's software. But the outcome and odds of winning are determined by algorithmic code (known as a "random number generator") devised by the owners of High 5 Casino themselves.

30.     The other Sweepstakes Casinos follow the same model as High 5 Casino, with only slight, and ultimately immaterial, variations.

31.     For example, Chumba Casino ("Chumba") and LuckyLand Slots ("LuckyLand), both owned by VGW Holdings of Australia, are also sweepstakes casino websites with affiliated apps available through APPLE's App Store and GOOGLE's Play Store. Chumba and LuckyLand offer traditional games of chance like blackjack and roulette, along with a plethora of digital slot machines. The user interface on both sites is largely similar to the look and feel of games that may be found in traditional brick-and-mortar casinos (figs. 3-5):



**fig. 3**



**fig. 4**



**fig. 5**

32.     Just like in a real casino, the outcome of the games of chance offered on Chumba Casino and LuckyLand Slots are purportedly determined at random. Once a user enters a wager on a particular game (*e.g.*, blackjack or slots), the website or app being used displays a result determined by algorithmic code (again, a "random number generator") in their software. The odds of winning are thus determined by an algorithm devised by VGW Holdings, and exclusively under their control.

### III. The Sweepstakes Casinos Camouflage their Illegal Gambling Racket

33.     High 5, Chumba, LuckyLand Slots, and other Sweepstakes Casinos camouflage their illegal gambling operations by promoting a two-tiered system of virtual currency used to play their games. To play the games of chance offered by these Sweepstakes Casinos, users like the Plaintiffs choose between wagering either *Game Coins* (on High 5 Casino) or *Gold Coins* (on Chumba and LuckyLand)—utility tokens that, by themselves, have no value outside the virtual casino—or their *Sweeps Coins*, which may in fact be redeemed for real value.

34.     When a user first opens an account at the casino, they are awarded an initial allotment of free Game Coins or Gold Coins, along with a small number of Sweeps Coins.[2] The Sweepstakes Casinos typically reward users intermittent bonuses for continued play; *e.g.*, users of High 5 receive a daily bonus of Sweeps Coins, which they can "redeem for real prizes", and a bonus of Game Coins and Diamonds every four hours (*figs.* 6-7, where 'GC' refers to Game Coins and 'SC' refers to Sweeps Coins).  VGW's Chumba follows a similar pattern (*figs.* 8-9):



**fig. 6**

---

[2] High 5 also provides 'Diamonds', another form of non-redeemable utility token unique to that platform.



## Welcome to Your Daily Bonus at High 5 Casino

At High 5 Casino, the fun never stops with our Daily Bonus designed to reward you with **high 5 casino free coins** and more every single day—just **log in to High 5 Casino** to claim your rewards, completely free of charge. Whether you're collecting Game Coins to play for fun or Sweeps Coins to redeem for real prizes, there's always something to look forward to.

## What You Get Every Day

- **Daily Harvest**: Log in each day and claim your **FREE Sweeps Coins** to keep the excitement going.
- **4-Hour Bonus**: Collect **Game Coins and Diamonds** every 4 hours! This bonus ensures that you always have what you need to enjoy your favorite games.

fig. 7



fig. 8 (Chumba)



**fig. 9 (Chumba)**

35. To be sure, High 5 Casino, much like other Sweepstakes Casinos, repeatedly states that their Sweeps Coins are, in fact, redeemable for cash and other valuable prizes (*fig.* 10-11):

**What can you win on social casinos?**

Our social casino is totally free to play. But, you can gain Sweeps Coins while you play that can be exchanged for amazing prizes.

**fig. 10 (*available at* https://high5casino.com/)**

**Does High 5 Casino award real cash prizes?**

Yes, High 5 Casino awards real cash prizes! While the platform focuses on a fun and engaging social casino environment, it also allows players to redeem Sweeps Coins for real cash prizes. When you accumulate enough Sweeps Coins, you have the option to convert them into real-world rewards, which is why our players can't get enough of our amazing games!

The process is designed to be quick and simple. Once you hit the required amount of Sweeps Coins, you can choose to either redeem them for cash prizes through the redeem cashier or exchange your sweepstakes tokens for physical items via Prizeout, a third-party rewards platform. Our players love the flexibility of being able to choose between cash prizes or fun rewards, making High 5 Casino a standout platform social casino gamers.

**fig. 11 (*available at* https://high5casino.com/helpcenter/how-to-redeem-real-cash-prizes/)**

36. Despite the assurances repeated *ad nauseum* throughout their websites and elsewhere, that their games of chance are always "free to play", the Sweepstakes Casinos offer multiple options to *purchase* packages of Game Coins or Gold Coins that include Sweeps Coins thrown in as a bonus (*figs.* 12-14, *infra*, where again, 'GC' refers to Game Coins and 'SC' refers to Sweeps Coins):



**fig. 12 (High 5)**



**fig. 13 (LuckyLand Slots)**



**fig. 14 (Chumba)**

37. Users typically lose their initial allotment of Game Coins (or Gold Coins) soon after they begin playing. As with a traditional brick-and-mortar casino, the longer a user plays, the more likely they will "bust" and run out of the coins needed to continue playing—but unlike a properly licensed casino, the Sweepstakes Casinos are not subject to any regulatory oversight as to the odds of winning.

38. After their initial bankroll of Game Coins is gone, users can either replenish their account by either cashing in a Sweeps Coin, or by purchasing additional Game Coins in the hopes of eventually redeeming their Sweeps Coins for real value.

39. Despite the representations alluded to in ¶36, *supra*, the Sweepstakes Casinos gladly accept U.S. dollars to purchase packages of coins through a variety of payment methods, including, but not limited to: debit cards, credit cards, bank transfers, gift cards and digital wallet transactions (*fig.* 15). Other Sweepstakes Casinos, including High 5, encourage the use of proprietary payment systems owned and operated by Defendants GOOGLE PAYMENT CORP. and APPLE PAYMENTS (*viz.*, Google Pay and Apple Pay, respectively; *figs.* 16-17):



**fig. 15 (High 5 Casino)**

**Apple Pay**

For players using Apple devices, we also offer the option to pay with Apple Pay. This is a fast, secure, and seamless way to purchase Crown Coins directly from your iPhone, iPad, or Mac. With Apple Pay, there's no need to enter your card details manually—simply confirm your purchase using Face ID, Touch ID, or your device passcode.

To use Apple Pay, select it as your payment method at checkout. Make sure Apple Pay is set up on your device and linked to your preferred payment method. Once confirmed, your Crown Coins will be added to your account instantly.

**fig. 16 (Wow Vegas)**

**Banking**

- **What payment methods can I use?**
  You can make transactions using Amex, Diners, Mastercard, Visa, Googlepay, Applepay, Skrill and Trustly.

**fig. 17 (CrownCoins)**

40.     Sweepstakes Casinos further camouflage their scheme by allowing users to seamlessly toggle between play in either standard mode, using Game Coins that have no value outside the platform; or in sweepstakes mode, using Sweeps Coins that can be redeemed for value. An example of the toggle button between the two modes of play appears below (*figs.* 18-19, where 'GC' refers to Game Coins and 'SC' refers to Sweeps Coins):



**fig. 18 (Chumba)**



**fig. 19 (High 5)**

41.     Ultimately, Plaintiffs and other users of the Sweepstakes Casinos websites and apps available through APPLE's App Store and GOOGLE's Play Store have been lured to wager Game

Coins and the like purchased from the Sweepstakes Casinos in the hopes of earning Sweeps Coins that can be redeemed for value. Playing games of chance on Sweepstakes Casino websites, or by downloading their affiliated app to a personal electronic device like a cell phone or tablet, satisfies the statutory definition of "gambling" and renders the device a "gambling device" or "slot machine" as those terms are defined at N.J.S.A. § 2C:37-1, N.Y. Penal Law §§ 225.00(2) and (7), and other state laws.

## IV. The Sweepstakes Casinos' False Marketing

42.     The Sweepstakes Casinos—after endless assurances that their games of chance are legal and for entertainment only—use a network of paid influencers and misleading customers testimonials to promote their unlawful scheme.

43.     For example, High 5 operates a YouTube Channel, @High5Casino, brazenly promoting the idea that users can win real money by playing their games and winning Sweeps Coins. Advertisements on the High 5 Casino website and YouTube channel also include Internet influencers holding over-sized checks to emphasize that users can win big money playing games of chance on High 5 Casino (*fig.* 20):



**High 5 Casino Brings Thrilling Wins and Endless Fun for Free!**

**fig. 20**

44.    Chumba Casino and LuckyLand Slots similarly use a network of paid influencers and misleading customer testimonials on YouTube and elsewhere to spread the message that users can win real money by playing their games and winning Sweeps Coins. Advertisements on their websites and all over YouTube include testimonials of people holding over-sized checks to emphasize that users can win big money playing their games of chance (*fig.* 21):



**fig. 21**

45.    "YouTube" is an online video platform owned and operated by Defendant GOOGLE.

46.    The Sweepstakes Casinos' not-so-subtle marketing campaigns, broadcasting the potential of winning real money on their websites and apps, amount to an astounding admission: the Sweepstakes Casinos are carrying on an illicit gambling enterprise, with the full cooperation of Defendants APPLE and GOOGLE, in violation of the laws of numerous states and federal law against unlicensed interstate gambling.

47.    Incredibly, the Sweepstakes Casinos even include the kind of disclaimers found on the lawful websites of traditional brick-and-mortar casinos. For example, High 5 exhorts players

to "set a monthly entertainment budget" on their ostensibly free gaming platform, cautionary language belying their *ad nauseum* representations that their games are free to play (fig. 22):

> **SET A MONTHLY ENTERTAINMENT BUDGET**
>
> A good first step in budgeting for sweepstakes casinos is setting aside a specific amount each month for entertainment. Consider this an "entertainment budget" — similar to what you might spend on movies or dining out. By designating a specific amount, you're free to enjoy your favorite sweepstakes games without overspending or feeling pressured to make extra purchases. This method not only keeps gameplay in check but also gives you peace of mind knowing you're staying within limits that work for you.

fig. 22 **(High 5)**

48.     The homepages of Chumba Casino and LuckyLand Slots each include links to a page, *available at* https://shorturl.at/IinAX (last accessed March 17, 2025), which describes their "Responsible Social Gameplay Policy" on their ostensibly free websites.  The webpage explains their self-exclusion policies, offers advice on how to spot problem gambling, and provides referrals to support organizations.

49.     *These disclaimers amount to an admission that the Sweepstakes Casinos offer illegal gambling,* in spite of their tiresome claims that their games are always "free to play" for "fun and entertainment."

50.     Nevertheless, the Sweepstakes Casinos knowingly, willfully, and prominently misrepresent themselves as legal websites authorized to operate throughout the United States, a claim abetted by Defendants APPLE and GOOGLE, who are facilitating the distribution and promotion of the Sweepstakes Casinos' illicit gambling enterprise, as described below.

**V.  The Sweepstakes Casinos' False Promises About Redeeming Sweeps Coins**

51.     The Sweepstakes Casinos promise that Sweeps Coins won on their casinos are redeemable for cash and other valuable prizes. Instead, Plaintiffs and the other members of the

class have discovered, albeit too late, that the Sweepstakes Casinos are playing with a loaded deck.

52.     Internet chat forums like Reddit are rife with tales similar to the experiences of each of the Plaintiffs: Players who try to cash out their winnings on Sweepstakes Casinos like High 5 Casino, Chumba Casino, LuckyLand Slots and others have discovered that they're the victims of a classic "bait and switch." *The redemption process is phony; these predatory Sweepstakes Casinos rarely, if ever, redeem any of their Sweeps Coins for any kind of real value.*

53.     Sweepstakes Casinos typically reject requests by players to redeem their Sweeps Coins for arbitrary, and largely contrived, reasons. The tactics used by High 5, Chumba Casino, LuckyLand Slots and other Sweepstakes Casinos to prevent users from redeeming their Sweeps Coins reveal that these apps and websites are not just running illegal, unlicensed casino operations—*they are also operating a patent fraud.*

54.     Because the Sweepstakes Casinos are operating real online casinos, while not beholden to any of the regulators (*e.g.*, New Jersey's Casino Control Commission) who oversee the operations of traditional, licensed casinos, there is simply no way to ensure that these Sweepstakes Casinos honor any of their promises.

## VI. Losses to the Plaintiff Class Amount to Hundreds of Millions of Dollars

55.     The Sweepstakes Casinos' illegal gambling operations have been extremely lucrative for them, while driving many victims of their scheme to financial ruin.

56.     For example, the audited financial statements of VGW Holdings (corporate parent of Chumba Casino and LuckyLand Slots) demonstrate that the company made over $500m Australian Dollars in 2023, and over $600m Australian Dollars in 2022—totaling well over $700m USD at recent currency exchange rates (*fig.* 23, where all numbers are in thousands of Australian Dollars):

**VGW HOLDINGS LIMITED AND CONTROLLED ENTITIES**
**Consolidated Statement of Profit or Loss and Other Comprehensive**
**Income for the year ended 30 June 2023**

| From continuing operations | Note | 2023 $'000 | 2022 $'000 |
|---|---|---|---|
| Revenue from contracts with customers | 4 | 4,835,148 | 3,457,148 |
| Sweepstakes prizes | | (3,355,545) | (2,288,975) |
| Merchant and affiliate fee | | (248,902) | (161,462) |
| Finance income | 5 | 5,753 | 89 |
| Finance costs | 5 | (10,849) | (1,479) |
| Foreign currency (loss)/gain | 5 | (22,654) | 10,464 |
| Other income | 5 | 217 | 9 |
| Marketing and advertising fees | 5 | (359,987) | (235,259) |
| Legal and professional fees | | (65,384) | (33,102) |
| Employee benefits expense | 6 | (116,862) | (80,408) |
| Share-based payments expense | | (24,397) | (8,171) |
| Depreciation and amortisation expense | | (6,927) | (5,977) |
| Technology and other communication expense | | (47,984) | (31,105) |
| Property and occupancy expense | | (2,281) | (1,589) |
| Sponsorship, general and administration expense | | (33,198) | (16,079) |
| | | (4,289,000) | (2,853,044) |
| Profit before income tax | | 546,148 | 604,104 |

**fig. 23**

57.     Upon information and belief, in addition to High 5, Chumba Casino, and
LuckyLand Slots, there are a dozen or more such websites,[3] suggesting that the losses suffered by
the proposed class run into the hundreds of millions of dollars—and a substantial portion of those
losses have accrued to Plaintiffs and the other members of the proposed class.

58.     High 5, Chumba, and LuckyLand Slots, like other Sweepstakes Casinos, maintain
detailed records of every individual player's identity, individualized data about their purchase
history, their redemption history, and every single wager they make. Like other Sweepstakes
Casinos, these casinos maintain sufficient records to calculate and reveal the losses sustained by
Plaintiffs and other members of the proposed class.

---

[3] Others include Global Poker, Stake.us, Chanced Casino, Funrize Casino, Hello Millions
Casino, McLuck, Wow Vegas, Fortune Coins Casino, Zula Casino, Moonspin Casino, Jackpota
Casino, Scrooge Casino, and more.  This is by no means and exhaustive list.

## VII. The Defendants' Role in the Conspiracy

59.     The promotion and distribution of the Sweepstakes Casinos apps through GOOGLE's Play Store and APPLE's App Store to users of Android and iOS devices, respectively, is crucial to the furtherance of Defendants' illicit, interstate gambling scheme.

60.     GOOGLE and APPLE maintain near absolute control over their respective application platforms. Upon information and belief, the Defendants each take up to 30% of all revenues generated by app sales through the Play Store and the App Store. Thousands of software developers make applications for Android devices and iOS devices available for download exclusively through GOOGLE's Play Store and APPLE's App Store, respectively.

61.     GOOGLE and APPLE provide the Sweepstakes Casinos with resources and business tools needed to maximize their success on the Play Store and App Store, respectively. For example, the Sweepstakes Casinos submit their apps for review to the Defendants, who then have an opportunity to determine whether the apps comply with state and federal law; the Defendants counsel them through the app launch process; and the Defendants provide targeted advertising to promote the apps throughout their respective platforms.

62.     As described above, while most of the apps developed by the Sweepstakes Casinos are free to download, users are then urged to make in-app purchases of Game Coins and the like within the app itself, typically using either a credit or debit card. Defendants GOOGLE and APPLE may take up to 30% of any in-app purchases made by a consumer *after* they initially download the app to their personal device.

63.     The Defendants facilitate the Sweepstakes Casinos' predatory conduct by helping them target the consumers most likely to fall prey to their illicit scheme.  The Defendants provide marketing guidance, promotional tools, and more to drive consumers to download the Sweepstakes

Casinos' apps and make in-app purchases.  For example, Defendant GOOGLE offers a full suite of tools to the Sweepstakes Casinos to promote their apps through Google's Search, YouTube, the Play Store and more (*available at* https://business.google.com/us/ad-solutions/app-ads/ (last accessed March 20, 2025)).

64.     The Defendants monitor game activity and collect spending data that the Sweepstakes Casinos use to increase user spending on their apps and websites, allowing them to target a small percentage of high-spending users who drive much of the Sweepstakes Casinos' revenues.  The data collected by the Defendants, and the tools used to promote the Sweepstakes Casinos, necessarily contributes to the structure and success of the Sweepstakes Casinos' illicit scheme.

65.     Moreover, the Defendants compound their participation in the Sweepstakes Casinos' predatory and unlawful conduct by offering consumers the option to pay using proprietary payment processing services owned and operated by Defendants GOOGLE PAYMENT CORP. and APPLE PAYMENTS (Google Pay and Apple Pay, respectively). Upon information and belief, GOOGLE PAYMENT CORP. and APPLE PAYMENTS take a substantial commission for each purchase of Game Coins or similar tokens using their payments processing services.

66.     The Defendants are under a contractual obligation to remit the balance of the user's payment for apps and in-app purchases to the developers of the software, *viz.*, the Sweepstakes Casinos.  However, payments made by Plaintiffs and others to the Sweepstakes Casinos using G-Pay or Apple Pay are remitted directly to GOOGLE PAYMENT CORP. or APPLE PAYMENTS, respectively.

67.     The Defendants, two of the most successful companies in the world, are thus directly profiting from the Sweepstakes Casinos' unlawful misconduct. Their payment subsidiaries

are in essence acting as a cashier's window for these predatory Sweepstakes Casinos.

68.   The Defendants' control over their respective platforms means they can decide which apps are available for download to users of their Android and iOS devices. Despite numerous complaints from users and others that should have long ago put GOOGLE and APPLE on notice that the Sweepstakes Casinos are operating as unlicensed, illegal casinos throughout the country, they have failed to exclude the Sweepstakes Casinos from their application platforms or otherwise do anything to restrict access to the Sweepstakes Casinos' software, but are instead knowingly and willfully facilitating their distribution.

69.   Defendants have therefore known, or should have known, that these Sweepstakes Casinos are operating in full violation of state and federal law. Plaintiffs seek to enjoin the Defendants from further participating in, promoting, or facilitating the Sweepstakes Casinos' unlawful interstate gambling enterprise.

70.   Despite knowing that the Sweepstakes Casinos' websites and apps are illegal, the Defendants continue to maintain a sizable financial interest by hosting their apps on the GOOGLE's App Store and APPLE's Play Store; using targeted advertising powered by search algorithms to drive customers to the Sweepstakes Casinos apps and websites; and in many instances, processing payments on behalf of the Sweepstakes Casinos themselves.

71.   As such, the Defendants are liable as co-conspirators to an illegal gambling enterprise along with the Sweepstakes Casinos. Moreover, the Sweepstakes Casinos named herein, are just several of a dozen or more that the Defendants illegally host on their App Store (APPLE) and Play Store (GOOGLE) and thereby distribute to unwitting consumers.

72.   The Defendants, for their part, directly participate in an informal association and enterprise of individuals and entities with the explicit purpose of knowingly devising and operating

an online gambling scheme to exploit consumers and reap hundreds of millions of dollars in profits (the "Sweepstakes Casino Enterprise").

73.     This ongoing Sweepstakes Casino Enterprise necessarily promotes the success of each of its members:  the Sweepstakes Casinos need the Defendants to access consumers, distribute their illegal gambling software, and process payments. The Defendants, for their part, need developers like the Sweepstakes Casinos to publish and market the misleading and pernicious software applications on their App Store (APPLE) and Play Store (GOOGLE), and they distribute the illegal gambling software to generate massive revenue streams for all parties to the Enterprise.

74.     Through this case, Plaintiff and the proposed class members seek to force the Defendants to stop facilitating and participating in the Sweepstakes Casino Enterprise, and to return to consumers the money they have illegally obtained therefrom.

75.     Plaintiffs, on behalf of themselves and the proposed class members, bring claims for damages and injunctive relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 et seq. ("CFA"),  New York's Gen. Bus. Law § 349, and similar state consumer protection statutes.

## FACTS SPECIFIC TO PLAINTIFF JULIAN BARGO

76.     Plaintiff JULIAN BARGO is a natural person and citizen of New Jersey who resides in Bergen County, New Jersey at all times material to this Complaint.

77.     Between June 2024 and October 2024, Plaintiff registered with and used the following sweepstakes casino websites: High 5 Casino (*available at* https://high5casino.com), a casino website owned and operated by High 5 Entertainment, which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins as outlined in ¶¶'s 33-41, *supra*; CrownCoins Casino (*available at* https://crowncoinscasino.com), a casino website

owned and operated by Sunflower Ltd., which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins; Wow Vegas (*available at* https://www.wowvegas.com/), a casino website owned and operated by MW Services, which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins; and McLuck.com (*available at* https://www.mcluck.com/home), a casino website owned and operated by B-Two Ltd., which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins.

78.     Plaintiff JULIAN BARGO downloaded the aforementioned sweepstakes casino apps to his iPhone from APPLE's App Store. Plaintiff purchased Game Coins from the aforementioned sweepstakes casinos using Apple Pay (owned and operated by Defendant APPLE PAYMENTS) which he then wagered on his iPhone for the chance to earn Sweeps Coins, which were represented to him and others as redeemable for value.

79.     Plaintiff has standing to bring this action because Plaintiff was damaged by the illegal gambling enterprise conducted by the Sweepstakes Casinos in conjunction with the Defendants. Most, if not all, of Plaintiff JULIAN BARGO's losses were sustained by playing the games of chance operated by the Sweepstakes Casinos as described in ¶77 and distributed and made available to him with the knowing assistance of one or more of the Defendants.

80.     During the relevant period described in ¶77, Plaintiff BARGO lost well over $1,000 playing the unlawful games of chance promoted and operated by the Sweepstakes Casinos named therein, whose scheme is substantially identical to that described in ¶¶22-58 *supra* and who were materially assisted by the Defendants as described in ¶¶59-75, *supra*.

## FACTS SPECIFIC TO PLAINTIFF LAMAR PRATER

81.     Plaintiff LAMAR PRATER is a natural person and citizen of New York who

resides in Schenectady County, New York at all times relevant to this Complaint.

82.     Between May 2024 and July 2024, Plaintiff LAMAR PRATER registered with and used the following sweepstakes casino websites: LuckyLand Slots (*available at* https://luckylandslots.com), a casino website owned and operated by VGW Luckyland Inc., which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins as outlined in ¶¶'s 33-41, supra.

83.     Plaintiff LAMAR PRATER downloaded the LuckyLand Slots app to his iPhone from APPLE's App Store. Plaintiff purchased Gold Coins from LuckyLand Slots, which he then wagered on his iPhone for the chance to earn Sweeps Coins, which were represented to him and others as redeemable for value.

84.     Plaintiff LAMAR PRATER is authorized to bring this action because Plaintiff was damaged by the illegal gambling enterprise conducted by the Sweepstakes Casinos in conjunction with the Defendants. Most, if not all, of LAMAR PRATER's losses were sustained by playing the games of chance on LuckyLand Slots as described above and distributed and made available to him with the knowing assistance of one or more of the Defendants.

85.     During the relevant period described in ¶82, Plaintiff lost well over $1,000 playing the unlawful games of chance on the sweepstakes casinos promoted by the Defendants named therein, whose scheme is substantially identical to that described in ¶¶22-58 supra and who were materially assisted by the Defendants as described in ¶¶59-75, *supra*.

### FACTS SPECIFIC TO PLAINTIFF REBECCA PRATT

86.     Plaintiff REBECCA PRATT is a natural person and citizen of New York who resides in Chautauqua County, New York at all times relevant to this Complaint.

87.     Between June 2024 and August 2024, Plaintiff REBECCA PRATT registered with

and used the following sweepstakes casino website: Chumba Casino (*available at* https://www.chumbacasino.com), a casino website owned and operated by VGW Malta Ltd., which offers the chance to win sweepstakes prizes by accumulating ostensibly redeemable Sweeps Coins as outlined at ¶¶'s 33-41, *supra*.

88.     Plaintiff downloaded the Chumba Casino app to her Android phone from GOOGLE's Play Store. Plaintiff purchased Gold Coins from Chumba Casino using Google Pay (owned and operated by Defendant GOOGLE PAYMENT CORP.) which she then wagered on her Android-based phone for the chance to earn Sweeps Coins, which were represented to her and others as redeemable for value.

89.     Plaintiff REBECCA PRATT is authorized to bring this action because she was damaged by the illegal gambling enterprise conducted by the Sweepstakes Casinos in conjunction with the Defendants. Most, if not all, of REBECCA PRATT's losses were sustained by playing the games of chance operated on Chumba Casino, as described in ¶61 and distributed and made available to her with the knowing assistance of one or more of the Defendants.

90.     During the relevant period described in ¶87, Plaintiff lost over $1,000 playing the unlawful games of chance promoted on the sweepstakes casino promoted by the Defendants named therein, whose scheme is substantially identical to that described in ¶¶22-58 supra and who were materially assisted by the Defendants as described in ¶¶59-75, *supra*.

## CLASS ALLEGATIONS

91.     **Nationwide Class Definition:**  Plaintiffs JULIAN BARGO, LAMAR PRATER and REBECCA PRATT bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All persons who have lost money by wagering in any Sweepstakes Casino with the assistance and participation of one or more of the Defendants.

92.     **New Jersey Subclass Definition:**  Plaintiff JULIAN BARGO brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Subclass of similarly situated individuals, defined as follows:

> All New Jersey residents who have lost money by wagering in any Sweepstakes Casino with the assistance and participation of one or more of the Defendants.

93.     **New York Subclass Definition:**  Plaintiffs LAMAR PRATER and REBECCA PRATT bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and a Subclass of similarly situated individuals, defined as follows:

> All New York residents who have lost money by wagering in any Sweepstakes Casino with the assistance and participation of one or more of the Defendants.

94.     The following people are excluded from the Class, the : (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, and any entity in which the Defendants or its parents have a controlling interests and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

95.     **Numerosity:** Upon information and belief, tens of thousands of New Jersey and New York residents, including the residents of other states, fall into the definition of the New Jersey Subclass, New York Subclass, and Nationwide Class, respectively. Members of the Nationwide Class and each respective Subclass can be identified through Defendants' records, discovery, and other third-party sources.

96.     **Commonality and Predominance:** There are many questions of law and fact

common to Plaintiffs and the claims of the Nationwide Class and each respective Subclass, and those questions predominate over any questions that may affect individual members of the Nationwide Class and respective Subclasses. Common questions for the Nationwide Class and the respective Subclasses include, but are not necessarily limited to, the following:

a. Whether the games offered by the Sweepstakes Casinos are "gambling" as defined by New Jersey law at N.J.S.A. § 2C:37-1(b), as defined by New York law at N.Y. Penal Law § 225.00(2), and as defined by the laws of other states;

b. Whether downloading the apps developed by the Sweepstakes Casinos from a platform controlled by the Defendants renders the phone, tablet or other personal electronic device to which it is downloaded a "gambling device" or "slot machine" as defined by New Jersey law at N.J.S.A. § 2C:37-1(e) and (f), respectively, and as defined by New York law at N.Y. Penal Law § 225.00(7); and as defined by the laws of other states;

c. Whether Plaintiff and each member of the Class lost money or anything of value by playing the games of chance developed by the Sweepstakes Casinos and promoted by the Defendants;

d. Whether Defendants have violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.*, or have violated New York Gen. Bus. Law § 349, or have violated the consumer protection laws of other states;

e. Whether Defendants have violated the federal RICO Act, 18 U.S.C. § 1962(c);

f. Whether the Defendants have been unjustly enriched by their misconduct;

g. Alternatively, whether the Defendants have breached their implied covenants of good faith and fair dealing with the members of the New Jersey Subclass or the

New York Subclass;

    h.   Alternatively, whether the Defendants are liable to the Plaintiffs for common law fraud.

97.    **Typicality:** Plaintiffs claims are typical of the claims of other members of the Nationwide Class and each respective Subclass in that the Plaintiffs and the other members of the Nationwide Class and each Subclass have sustained damages arising from the wrongdoing of the Defendants.

98.    **Adequate Representation:**  Plaintiffs will fairly and adequately protect the interests of the Nationwide Class and each respective Subclass, which is estimated to consist of numerous citizens of New Jersey, New York and elsewhere, respectively. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Nationwide Class and each respective Subclass, as Plaintiffs and each member of the Nationwide Class and Subclasses has lost money playing the games of chance provided by the Sweepstakes Casinos through apps distributed, promoted and made available to them on the APPLE's App Store or GOOGLE's Play Store, or through Sweepstakes Casinos' websites promoted by targeted advertising using algorithms controlled by Defendants APPLE and GOOGLE and paid for with APPLE PAYMENTS' Apple Pay or GOOGLE PAYMENT'S Google Pay (a/k/a "G-Pay"). Plaintiffs and their counsel intend to vigorously prosecute this action on behalf of the Nationwide Class and respective Subclasses and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests that are antagonistic to those of the Nationwide Class or respective Subclasses, and Defendants have no defenses unique to Plaintiff.

99.    **Policies Generally Applicable to the Nationwide Class and respective**

**Subclasses:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Nationwide Class and each respective Subclass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Nationwide Class and each respective Subclass, and making final injunctive relief appropriate with respect to the Nationwide Class as a whole. Defendants' misconduct and malfeasance that Plaintiffs challenge apply and affect members of the Nationwide Class and each respective Subclass uniformly, and Plaintiffs' challenge of Defendants' misconduct and malfeasance hinges on Defendants' conduct with respect to the Nationwide Class and each respective Subclass as a whole, not on facts or law applicable only to the Plaintiffs themselves. The factual and legal bases of the Defendants' liability to Plaintiffs and to the other members of the Nationwide Class and respective Subclasses are the same.

100. **Superiority:** This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Nationwide Class and each respective Subclass is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendants' wrongful conduct. Absent a class action, it would be difficult if not impossible for the individual members of the Nationwide Class and respective Subclasses to obtain effective relief from Defendants. Even if members of the Nationwide Class and respective Subclasses could sustain such individual litigation by themselves, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties

and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Class certification in this matter will foster economies of time, effort, and expense, and will ensure uniformity of decisions and avoid the danger of inconsistent or contradictory judgments arising from the same or substantially similar sets of facts.

101.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class, New Jersey Subclass and New York Subclass may be expanded or narrowed by amendment or amended complaint.

### FIRST CAUSE OF ACTION
### Violations of N.J.S.A. 2A:40-1
### (On behalf of Plaintiff JULIAN BARGO and the New Jersey Subclass)

102.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

103.    Plaintiff, members of the Class, and Defendants are all "persons" as defined by N.J.S.A. 2A:40-1.

104.    New Jersey's gaming loss recovery statute, N.J.S.A. 2A:40-5, provides as follows:

> If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title [illegal gaming], and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery.

105.    *Gaming*, as defined at N.J.S.A. 2A:40-1, means "[a]ll wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event." *Gambling* is separately defined at N.J.S.A. 2C:37-1(b), "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding

that he will receive something of value in the event of a certain outcome."

106.    N.J.S.A. 2C:37-1(d) defines "something of value" as "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."   The "Game Coins" and "Sweeps Coins" sold by the Sweepstakes Casinos, however denoted by the specific app or website at issue, are "something of value" under N.J.S.A. 2C:37-1(d) because they are "token[s], object[s] or article[s]" sold for use at the Sweepstakes Casinos' apps and websites in exchange for real money or property or "any interest therein."

107.    The apps and websites owned and operated by the Sweepstakes Casinos are illegal gambling operations under New Jersey law because they are games at which players wager something of value (virtual Game Coins or similar, bought and paid for with real money) and by an element of chance (*e.g.*, spinning an online slot machine) are able to obtain Sweeps Coins which can ostensibly be redeemed for real value, such as cash, gift cards, cryptocurrency and other prizes, as well as additional entertainment (for extended gameplay).

108.    The Defendants are the proprietors for whose benefit the games of chance offered by the Sweepstakes Casinos are played because Defendants APPLE, GOOGLE, APPLE PAYMENTS and GOOGLE PAYMENT CORP. facilitate the operations thereof and knowingly derive profits therefrom.

109.    As such, Plaintiff and members of the New Jersey Subclass were lured to an illegal, unlicensed gambling enterprise when they purchased Game Coins to wager at the websites and apps owned and operated by the Sweepstakes Casinos.   Plaintiff and each member of the Class staked money, in the form of Game Coins and similar utility tokens purchased with actual U.S.

currency, to play the Sweepstakes Casinos' games of chance (*e.g.*, digital slots, blackjack, roulette, *etc.*) for the chance to win additional things or value (*i.e.*, the opportunity to win Sweeps Coins and similarly denominated sweepstakes tokens, redeemable for cash and other valuable prizes, without additional charge).

110.    The Sweeps Coins that Plaintiff and the Class sought to win by playing the games of chance offered by the Sweepstakes Casinos are "thing[s] of value" under New Jersey law because the Sweepstakes Casinos represent that they can be redeemed for cash, gift cards, cryptocurrency and other valuable prizes.

111.    The games of chance offered by the Sweepstakes Casinos each meet the definition of a "[c]ontest of chance," as defined by N.J.S.A. 2C:37-1(a), because they are "any contest, game, pool, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants or some other persons may also be a factor therein." The Sweepstakes Casinos' games are ostensibly programmed to have outcomes that are determined entirely by chance, using algorithms designed to generate random numbers, so that a contestant's skill does not affect the outcome.

112.    The games of chance offered by the Sweepstakes Casinos are not "electronic amusements" or "skill-based attractions" as those terms are used and defined at N.J.S.A. 5:8-101 because their outcomes depend entirely upon chance and not upon the skill of the player, are not offered by a "recognized amusement park" as described under the Carnival-Amusement Rides Safety Act, N.J.S.A. 5:3-31 *et seq.*, and because the games of chance offered by the Sweepstakes Casinos are illegal "contest[s] of chance" as defined at N.J.S.A. 2C:37-1(a).

113.    As a direct and proximate result of the Sweepstakes Casinos' operation of their illegal gambling websites and apps, Plaintiff JULIAN BARGO and each member of the Class have

lost money wagering at the Sweepstakes Casinos' games of chance. Plaintiff JULIAN BARGO, on behalf of himself and the Class, seeks an order: (1) requiring the Defendants' to cease their participation in the operations of Sweepstakes Casinos' apps and websites; (2) requiring the Defendants to cease the distribution of the Sweepstakes Casinos' unlawful apps and websites; and (3) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

### SECOND CAUSE OF ACTION
**Violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2**
**(On behalf of Plaintiff JULIAN BARGO and the New Jersey Subclass)**

114. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

115. New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* protects both consumers and competitors by promoting fair business practices in commercial markets for goods and services.

116. To achieve that goal, the CFA prohibits any person from using "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation . . ." N.J.S.A. 56:8-2.

117. The CFA states that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action or assert a counterclaim therefor in any court of competent jurisdiction." N.J.S.A. 56:8-19.

118. Plaintiffs have suffered an injury-in-fact and have lost money or property as a result of the unlawful conduct by the Sweepstakes Casinos and the App Defendants.

119. Defendants have violated N.J.S.A. 56:8-1 *et seq.*, because the casino games owned and operated by the Sweepstakes Casinos and distributed with the knowing, willful participation

of Defendants constitute illegal gambling as defined at N.J.S.A. 2C:37-1(b) and as more fully explained above.

120.    Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendants were engaged in the business making computer games and other software applications available to the public.

121.    Defendants' acts and practices were and are injurious to the public interest because Defendants, in the course of their business, continuously advertised to and solicited the general public in New Jersey and throughout the United States to play the unlawful games of chance owned and operated by the Sweepstakes Casinos. This was part of a pattern or generalized course of conduct on the part of the Defendants, and many consumers have been adversely affected by Defendants' conduct acting in concert, and the public is at risk.

122.    The Defendants have profited immensely from the widespread distribution of the unlawful games of chance owned and operated by the Sweepstakes Casinos, amassing hundreds of millions of dollars from the losers of their games of chance.

123.    As a result of Defendants' conduct, Plaintiff and the members of the New Jersey Subclass suffered economic injury to their business or property in that they lost money wagering on Defendants' unlawful games of chance.

124.    Defendants' unfair or deceptive conduct proximately caused Plaintiffs and the Class members to suffer injury because, but for the challenged conduct, Plaintiff and the Class members would not have lost money wagering at or on the Sweepstakes Casinos' unlawful games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

125.    Plaintiff, on his own behalf and on behalf of the New Jersey Subclass, seeks to enjoin further violation of the law and to recover actual damages and treble damages, together with

the costs of suit, including reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On behalf of Plaintiff JULIAN BARGO and the New Jersey Subclass)

126.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

127.     Plaintiff brings this claim for unjust enrichment on behalf of himself and the New Jersey Subclass under the common law of unjust enrichment.

128.     As a result of their unlawful conduct described above, the Defendants have been and will continue to be unjustly enriched to the detriment of Plaintiff JULIAN BARGO and the members of the New Jersey Subclass by purchasing Game Coins using Google ("G-Pay") or Apple Pay to wager on games of chance provided by the Sweepstakes Casinos in the hopes of winning Sweeps Coins.

129.     Defendants have profited immensely by providing marketing guidance, developer tools and other assistance to the developers of the Sweepstakes Casinos and retaining a percentage of money spent by consumers in sweepstakes casino apps and websites.

130.     These profits were obtained from an illegal gambling enterprise in conjunction with the Defendants' material participation therein.

131.     These profits constitute a benefit conferred upon the Defendants by Plaintiff and other members of the New Jersey Subclass when purchasing Game or Gold Coins for the purpose of wagering in the Sweepstakes Casinos' unlawful apps and websites.

132.     Accordingly, Defendants will have been and will continue to be unjustly enriched if they are allowed to retain the illegal profits they have derived from participating in the Sweepstakes Casinos' illegal gambling enterprise.  Plaintiff JULIAN BARGO and the members of the New Jersey Subclass are entitled to recover the amount by which Defendants have been

unjustly enriched at their expense.

## FOURTH CAUSE OF ACTION
### Violations of N.Y. Gen. Oblig. Law §§ 5-419 and 5-421
### (On behalf of Plaintiffs LAMAR PRATER and
### REBECCA PRATT and the New York Subclass)

133.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

134.     Plaintiffs LAMAR PRATER and REBECCA PRATT, members of the New York

Subclass, and Defendants are all "persons" as described by N.Y. Gen. Oblig. Law §§ 5-419 5-421.

135.     New York's gaming loss recovery statute, N.Y. Gen. Oblig. Law § 5-421, provides

as follows:

> Every person who shall, by playing at any game, or by betting on the sides or hands
> of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars
> or upwards, and shall pay or deliver the same or any part thereof, may, within three
> calendar months after such payment or delivery, sue for and recover the money or
> value of the things so lost and paid or delivered, from the winner thereof.

136.     N.Y. Gen. Oblig. §5-419 separately provides for an action to recover money staked

upon "any wager or bet prohibited", whether the person seeking to recover has won or lost:

> Any person who shall pay, deliver or deposit any money, property or thing in action, upon
> the event of any wager or bet prohibited, may sue for and recover the same of the winner
> or person to whom the same shall be paid or delivered, and of the stakeholder or other
> person in whose hands shall be deposited any such wager, bet or stake, or any part thereof,
> whether the same shall have been paid over by such stakeholder or not, and whether any
> such wager be lost or not.

137.     N.Y. Gen. Oblig. Law § 5-401 prohibits "all wagers, bets or stakes, made to depend

upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown

or contingent event whatever….".

138.     Gambling is separately defined at N.Y. Penal Law § 225.00(2): "A person engages

in gambling when he stakes or risks something of value upon the outcome of a contest of chance

or a future contingent event not under his control or influence, upon an agreement or understanding

that he will receive something of value in the event of a certain outcome."

139.     § 225.00(6) defines "something of value" as "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

140.     The "Game Coins" and "Sweeps Coins" sold by the Sweepstakes Casinos, however denoted by the specific app or website at issue, are "something of value" under N.Y. Gen. Oblig. Law § 225.00(6) because they are "any token, object or article" sold for use at the Sweepstakes Casinos' online casinos in exchange for real money or property or "any interest therein."

141.     The apps and websites owned and operated by the Sweepstakes Casinos are illegal gambling operations under New York law because they are games at which players wager something of value (virtual "Game Coins", "Gold Coins" or the like, bought and paid for with real money) and by an element of chance (e.g., spinning an online slot machine) are able to obtain "Sweeps Coins" which can ostensibly be redeemed for real value, such as cash, gift cards, cryptocurrency and other prizes.

142.     The Defendants are the proprietors for whose benefit the games of chance offered by the Sweepstakes Casinos are played because Defendants APPLE, GOOGLE, APPLE PAYMENTS and GOOGLE PAYMENT CORP. facilitate the operations thereof and knowingly derive profits therefrom.

143.     As such, Plaintiffs and the New York Subclass were lured to an illegal, unlicensed gambling enterprise when they purchased "Game Coins" or the like to wager at the Sweepstakes Casinos' apps and websites.  Plaintiffs and each member of the Subclass staked money, in the form of Game Coins or similar utility tokens purchased with actual US currency, to play the games of

chance offered by the Sweepstakes Casinos (*e.g.*, digital slot machines, blackjack, roulette, etc.) for the chance to win additional things or value (*i.e.*, the opportunity to win sweepstakes tokens, referred to as "Sweeps Coins" or the like, redeemable for cash and other valuable prizes, without additional charge).

144.   The Sweeps Coins that Plaintiffs and the Subclass sought to win by playing the games of chance offered by the Sweepstakes Casinos are "thing[s] of value" under New York law because they can be redeemed for cash, gift cards, cryptocurrency and other valuable prizes.

145.   The casino games offered by the Sweepstakes Casinos each meet the definition of a "[c]ontest of chance," as defined by N.Y. Gen. Oblig. Law § 225.00(1), because they are "any contest, game, gaming scheme or gaming devise in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." The Sweepstakes Casinos' games are ostensibly programmed to have outcomes that are determined entirely by chance, using algorithms designed to generate random numbers, so that a contestant's skill does not affect the outcome.

146.   As a direct and proximate result of the Sweepstakes Casinos' operation of their illegal gambling apps and websites, Plaintiffs and each member of the Class have lost money wagering at the games of chance offered by the Sweepstakes Casinos.  Plaintiffs, on behalf of themselves and the Class, seek an order: (1) requiring the Sweepstakes Casinos to cease the operation of their gambling apps and websites; (2) requiring the Defendants to cease the distribution of the Sweepstakes Casinos' unlawful gambling apps and websites; and (3) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable by law.

## FIFTH CAUSE OF ACTION
### Violations of N.Y. Gen. Bus. Law § 349
### (On behalf of Plaintiffs LAMAR PRATER and
### REBECCA PRATT and the New York Subclass)

147.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

148.    Gen. Bus. Law § 349 protects both consumers and competitors by promoting fair business practices in commercial markets for goods and services.

149.    To achieve that goal, § 349(a) prohibits any person from using "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

150.    N.Y. Gen. Bus. Law § 349(h) states that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

151.    Plaintiffs have suffered an injury-in-fact and have lost money or property as a result of the unlawful gambling enterprise orchestrated by the Sweepstakes Casinos acting in conjunction with the Defendants.

152.    Defendants have violated N.Y. Gen. Bus. Law § 349 because the casino games owned and operated by the Sweepstakes Casinos and distributed with the Defendants' knowing, willful participation constitute illegal gambling as defined at N.Y. Penal Law § 225.00(2) and as more fully explained above.

153.    Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*,

while Defendants were engaged in the operation of making computer games and other software applications available to the public.

154.    Defendants' acts and practices were and are injurious to the public interest because Defendants, in the course of their business, continuously advertised to and solicited the general public in New York and throughout the United States to play Sweepstakes Casinos' unlawful games of chance. This was part of a pattern or generalized course of conduct on the part of the Defendants, and many consumers have been adversely affected by Defendants' conduct acting in concert with the Sweepstakes Casinos, and the public is at risk.

155.    The Defendants have profited immensely from the widespread distribution of the Sweepstakes Casinos' unlawful games of chance, amassing hundreds of millions of dollars from the losers of their games.

156.    As a result of Defendants' conduct, Plaintiffs and the members of the New York Subclass were injured in their business or property—*i.e.*, they suffered an economic injury—in that they lost money wagering on the Sweepstakes Casinos' unlawful games of chance.

157.    Defendants' unfair or deceptive conduct proximately caused Plaintiffs and the Subclass members to suffer injury because, but for the challenged conduct, Plaintiffs and the Subclass members would not have lost money wagering on the Sweepstakes Casinos' unlawful games of chance, and they did so as a direct, foreseeable, and planned consequence of Defendant's conduct.

158.    Plaintiffs, on their own behalf and on behalf of the New York Subclass, seek to enjoin further violation of the law and to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (On behalf of Plaintiffs LAMAR PRATER and
### REBECCA PRATT and the New York Subclass)

159.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

160.    Plaintiffs bring this claim for unjust enrichment on behalf of himself and the New York Subclass under the common law of unjust enrichment.

161.    As a result of their unlawful conduct described above, the Defendants have been, and will continue to be, unjustly enriched to the detriment of Plaintiffs LAMAR PRATER and REBECCA PRATT and the members of the New York Subclass by the latter's purchase of "Game Coins" or "Gold Coins" using Google Pay ("G-Pay") or Apple Pay to wager on games of chance provided by the Sweepstakes Casinos in the hopes of winning "Sweeps Coins."

162.    Defendants have profited immensely by providing marketing guidance, developer tools and other assistance to the Sweepstakes Casinos, and retaining a percentage of money spent by consumers in the Sweepstakes Casinos' apps and websites.

163.    These profits were obtained from an illegal gambling enterprise in conjunction with the Defendants' material participation therein.

164.    These profits constitute a benefit conferred upon the Defendants by Plaintiffs and other members of the New York Subclass when purchasing "Game Coins" or "Gold Coins" or the like, for the purpose of wagering in the Sweepstakes Casinos' unlawful apps and websites.

165.    Accordingly, Defendants will have been and will continue to be unjustly enriched if they are allowed to retain the illegal profits they have derived from participating in the Sweepstakes Casinos' illegal gambling enterprise.  Plaintiffs LAMAR PRATER and REBECCA PRATT and the members of the New York Subclass are entitled to recover the amount by which Defendants have been unjustly enriched at their expense

## SEVENTH CAUSE OF ACTION
### 18 U.S.C. § 1962(c) (RICO)
### Racketeering Activities and Collection of Unlawful Debts
### (On behalf of all Plaintiffs and a Nationwide Class)

166.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

167.    At all times relevant, each of the Defendants, APPLE,  APPLE PAYMENTS, GOOGLE and GOOGLE PAYMENT CORP., and the Sweepstakes Casinos, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), because each is capable of holding, and does hold, "a legal or beneficial interest in property."

168.    Plaintiffs are each a "person," as that term is defined in 18 U.S.C. § 1961(3), and have standing to sue, as they were injured in their business and/or property as a result of the Defendants' wrongful conduct described herein, including, but not limited to, the Sweepstakes Casinos and the Defendants (1) having unlawfully taken and received money from Plaintiffs and the proposed class; (2) having never provided Plaintiffs and members of the class a fair and objective chance to win—they could only lose by playing the games of chance owned and operated by the Sweepstakes Casinos; and (3) having directly and knowingly profited from, on information and belief, rigged and manipulated digital slot machines, roulette wheels and other games of chance.

169.    § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

170.    18 U.S.C. § 1961(1) defines "racketeering activity" to include (i) "any act ... involving ... gambling ... which is chargeable under State law and punishable by imprisonment for

more than one year;" (ii) any act which is indictable under Title 18, § 1084 of the U.S. Code (relating to the transmission of gambling information); and (iii) any act which is indictable under Title 18, § 1955 of the U.S. Code (relating to the prohibition of illegal gambling businesses).

171.    Because promoting gambling as defined at N.J.S.A. 2C:37-2 is potentially indictable under New Jersey law, and punishable by imprisonment for more than one year *per* N.J.S.A. 2C:37-2b(2); and because promoting gambling in the first degree as defined at N.Y. Penal Law § 225.10 is a class E felony, potentially indictable under New York law and punishable by imprisonment for up to four (4) years per N.Y. Penal Law § 70.00; and further because illegal gambling is indictable under both § 1084 and § 1955 of Title 18 of the U.S. Code; the Sweepstakes Casino Enterprise is engaged in "racketeering activity."

172.    18 U.S.C. § 1961(6) defines "unlawful debt" as a debt "(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof," and "(B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof."

173.    Because the Sweepstakes Casino Enterprise collects debts incurred from a gambling activity in violation of New Jersey law, New York law, and federal law, as described herein, its profits derived from its ownership and maintenance constitute "unlawful debt" as defined in Section 1961(6).

174.    The App Defendants violated 18 U.S.C. § 1962(c) and § 1962(d) by participating in, facilitating, or conducting the affairs of the Sweepstakes Casino Enterprise through a pattern of racketeering activity composed of indictable offenses under N.J.S.A. 2C:37-1 *et seq.*

175.    The affiliation between the Defendants and the Sweepstakes Casinos constitutes a conspiracy to use an enterprise for the collection of unlawful debt in violation of 18 U.S.C. §

1962(d).

## I. The Sweepstakes Casino Enterprise

176.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

177.    Under 18 U.S.C. § 1961(4) a RICO "enterprise" may be an association-in-fact that, although it has no formal legal structure, has (i) a common purpose, (ii) relationships among those associated with the enterprise, and (iii) longevity sufficient to pursue the enterprise's purpose. *See, e.g., Boyle v. United States*, 556 U.S. 938, 946 (2009).

178.    The Sweepstakes Casino Enterprise is an association-in-fact composed of the Defendants, APPLE INC., APPLE PAYMENTS, GOOGLE LLC, and GOOGLE PAYMENT CORP., and the Sweepstakes Casinos, who are engaged in, and whose activities affect, interstate commerce, and which have affected and damaged interstate commercial activity. This Enterprise exists separately from the otherwise legitimate businesses operations of each individual participant.

179.    The pattern of racketeering activity conducted by the members of the Sweepstakes Casino Enterprise is distinct from the Sweepstakes Casino Enterprise itself, as each act of racketeering is a separate offense committed by an entity while the Sweepstakes Casino Enterprise itself is an association-in-fact of legal entities. The Sweepstakes Casino Enterprise has an informal structure of app developers and platforms with continuing functions or responsibilities.

180.    For nearly a decade, the members of the Sweepstakes Casino Enterprise have collaborated together to target and retain high-spending users in their online gambling scheme throughout the country. The Defendants, upon information and belief, have mutually agreed to

continue their Enterprise through their ongoing collection of unlawful debts, functioning as a cohesive unit with the purpose of gaining illicit gambling profits.

## II. The Structure of the Sweepstakes Casino Enterprise

181.    The Sweepstakes Casino Enterprise consists of the Sweepstakes Casinos and the Defendants, APPLE INC., APPLE PAYMENTS, GOOGLE LLC and GOOGLE PAYMENT CORP.  Each participant agreed to conduct and carry out the affairs and goals of the Sweepstakes Casino Enterprise:

a.    The Sweepstakes Casinos agreed to conduct the affairs of the Sweepstakes Casino Enterprise by developing, updating and operating illegal online slot machines and other unlawful games of chance: the "gambling devices."  The Sweepstakes Casinos operate as the principals, forming the necessary business partnerships with the Defendants for the successful execution of their unlawful gambling scheme. The Sweepstakes Casinos fundamentally rely on software application platforms provided by the Defendants to host their games, access consumers, and collect revenue. Having had constructive notice of the unlawful nature of the Sweepstakes Casinos' illegal gambling websites and apps, the Defendants nevertheless agreed with all Enterprise participants to uphold their roles in the Sweepstakes Casino Enterprise, and to continue functioning as a single unit with the common purpose of facilitating the Sweepstakes Casinos unlawful scheme by distributing their software and collecting unlawful debts from online gambling activity.

b.    Defendants APPLE INC., APPLE PAYMENTS, GOOGLE LLC and GOOGLE PAYMENT CORP agreed to conduct the affairs of the Sweepstakes Casino Enterprise by hosting the virtual social gambling applications, distributing the apps to consumer personal electronic devices and processing in-app transactions in exchange for a

share in the gamblers' losses. Additionally, having had notice of the unlawful nature of the virtual social gambling applications, the Defendants nevertheless agreed with all participants to uphold their roles in the Sweepstakes Casino Enterprise, and to continue functioning as a single unit with the common purpose of facilitating the Sweepstakes Casinos' unlawful scheme, *viz.*, by distributing their software and collecting unlawful debts from online gambling activity.

182. At all relevant times, each Sweepstakes Casino Enterprise participant was aware of the conduct of the Sweepstakes Casino Enterprise itself; was a knowing and willing participant in that conduct; and reaped profits from that conduct through the distribution of the Sweepstakes Casinos' software and through in-app sales.

183. The persons engaged in the Sweepstakes Casino Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities.

184. All members of the Sweepstakes Casino Enterprise coordinate and maintain their respective roles in order to enrich themselves and to further the common interests of the whole.

185. Each Sweepstakes Casino Enterprise participant has participated in the operation and management of the Sweepstakes Casino Enterprise by directing its affairs as described herein.

186. The wrongful conduct of the Sweepstakes Casino Enterprise has been and remains part of the Sweepstakes Casino Enterprise's ongoing way of doing business and constitutes a continuing threat to the Plaintiffs' and the Class's property. Without the repeated illegal acts and intentional coordination between all participants, the Sweepstakes Casino Enterprise's scheme would not have succeeded and would not pose a threat to Plaintiffs and the other members of the proposed class into the future.

## III. Pattern of Racketeering Activity

187.    The affairs of the Sweepstakes Casino Enterprise were conducted in such a way as to form a pattern of racketeering activity. The Sweepstakes Casino Enterprise's general pattern of activity consists of designing and operating illegal, online slot machines and other games of chance and repeatedly violating public policy against gambling by:

    a.    Developing illegal online slot machines and other games of chance and disguising them as innocuous video game entertainment;

    b.    Distributing and operating illegal online slot machines and other games of chance that are, upon information and belief, rigged and manipulated;

    c.    Concealing the scope and deceptive nature of their unlawful casino apps and websites despite knowledge of their predatory design and business model;

    d.    Providing a host platform to house unlicensed gambling activity;

    e.    Injuring the public interest by continuously advertising to and soliciting the general public to play illegal online slot machines and other games of chance;

    f.    Conspiring to uphold the Sweepstakes Casino Enterprise; and

    g.    Unjustly collecting unlawful debts and retaining the profits from their illegal gambling apps and websites.

188.    The Sweepstakes Casino Enterprise has operated as a continuous unit since at least 2018.

189.    Pursuant to and in furtherance of their fraudulent scheme, the Defendants committed multiple predicate act violations of federal and state law as previously alleged herein, including violations of 18 U.S.C. § 1955, *inter alia.*

## EIGHTH CAUSE OF ACTION
### RICO § 1962(d)
### Conspiracy to Engage in Racketeering Activities
### and Collection of Unlawful Debts
### (On behalf of all Plaintiffs and a Nationwide Class)

190.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

191.    18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

192.    As described throughout, and as described in detail in Plaintiffs' Seventh Cause of Action above, even if they did not direct or manage the affairs of the Sweepstakes Casino Enterprise, the Defendants conspired to commit predicate acts in violation of § 1962(c), including violations of N.J.S.A. 2C:37-2, N.Y. Penal Law § 225.10, and 18 U.S.C. § 1955, *inter alia.*

193.    Defendants APPLE INC., APPLE PAYMENTS, GOOGLE LLC and GOOGLE PAYMENT CORP. acted at all times knowingly and willfully when agreeing to conduct the activities of the Sweepstakes Casino Enterprise. The Defendants agreed to, and indeed did, participate in the requisite pattern of racketeering activity which constitutes this RICO claim, collected unlawful debts, engaged in racketeering activities, and intentionally acted in furtherance of the conspiracy by conducting the pattern of racketeering and unlawful debt collection as described above.

194.    At the very latest, the Defendants had notice of the illegality of the Sweepstakes Casino Enterprise as of 2019. Their continuing participation in the Sweepstakes Casino Enterprise after that date demonstrates their commitment to upholding and operating the structure of the Sweepstakes Casino Enterprise.

195.    As a result of the Defendants' conduct, Plaintiffs and Members of the Class were

deprived of money and property that they would not otherwise have lost.

196. Under 18 U.S.C. § 1964(c), the Class is entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

### PRAYER FOR RELIEF

Plaintiffs JULIAN BARGO, LAMAR PRATER, and REBECCA PRATT, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

    a. Certifying this case as a class action on behalf of the proposed Nationwide Class, New Jersey Subclass and New York Subclass defined at ¶ 72, *supra*;

    b. Appointing Plaintiffs as representative of the proposed Nationwide Class, and appointing their counsel as class counsel;

    c. Appointing Plaintiff JULIAN BARGO as representative of the proposed New Jersey Subclass, and appointing their counsel as class counsel;

    d. Appointing Plaintiffs LAMAR PRATER and REBECCA PRATT as representative of the proposed New York Subclass, and appointing their counsel as class counsel;

    e. Declaring that Defendants' conduct, as set out above, is unlawful under the New Jersey Consumer Fraud Act and under N.Y. Gen. Bus. Law § 349;

    f. Declaring that Defendants' conduct, as set out above, constitutes racketeering activities, collection of unlawful debts, and conspiracy to engage in the same;

    g. Entering judgment against Defendants jointly and severally in the amount of the losses suffered by Plaintiffs and the members of the Nationwide Class and each respective Subclass;

    h. Enjoining Defendants from continuing the challenged conduct;

i.   Awarding damages to Plaintiffs and the members of the Nationwide Class and each respective Subclass in an amount to be determined at trial, including trebling as appropriate;

j.   Awarding restitution to Plaintiffs and the members of the proposed class in an amount to be determined at trial;

k.   Requiring disgorgement of all of Defendants' ill-gotten gains;

l.   Awarding reasonable attorneys' fees and expenses;

m.   Awarding pre- and post- judgment interest, to the extent allowable by law;

n.   Requiring injunctive and/or declaratory relief as necessary to protect the interests of Plaintiffs and the proposed Nationwide Class and respective Subclasses; and

o.   Awarding such other and further relief as equity and justice require, including all forms of relief provided for under N.J.S.A. 2A:40-1, N.J.S.A. 56:8-1 *et seq.* (the New Jersey "Consumer Fraud Act"), N.Y. Gen. Oblig. Law § 5-421, N.Y. Gen. Bus. Law § 349, and federal RICO statute or, in the alternative, as provided for by common law of unjust enrichment.

## JURY TRIAL DEMANDED

Plaintiffs request a trial by jury of all claims that can be so tried.

## DESIGNATION OF TRIAL COUNSEL

Justin A. Meyers, Esq., is designated as trial counsel for Plaintiffs.

Dated:  March 21, 2025

By: s/    Justin Meyers
              Justin A. Meyers, Esq.

By: s/    Gary Meyers
          G. Martin Meyers, Esq.

LAW OFFICES OF G. MARTIN MEYERS, P.C.
*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT TO RULE 5.2(a)

    I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Fed. R. Civ. P. 5.2(a).

Dated: March 21, 2025          By: s/    Justin Meyers
                                Justin A. Meyers, Esq.

                                  By: s/    Gary Meyers
                                  G. Martin Meyers, Esq.

LAW OFFICES OF G. MARTIN MEYERS, P.C.
*Attorneys for Plaintiffs*